IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

ROSA E. SORIANO,          )   CIVIL. NO. 11-00044 SOM/KSC
                           )
        Plaintiff,      )   ORDER (1) GRANTING IN PART AND
                           )   DENYING IN PART DEFENDANTS
    vs.                 )   WELLS FARGO BANK, N.A., WELLS
                           )   FARGO HOME MORTGAGE, INC., AND
WELLS FARGO BANK, N.A., WELLS )   WELLS FARGO HOME MORTGAGE OF
FARGO HOME MORTGAGE, INC.,   )   HAWAII, LLC'S MOTION TO
WELLS FARGO HOME MORTGAGE OF )   DISMISS SECOND AMENDED
HAWAII, LLC, and SAMP, LLC,  )   COMPLAINT; (2) DENYING
                           )   DEFENDANT SAMP, LLC'S
        Defendants.     )   SUBSTANTIVE JOINDER IN
                           )   DEFENDANTS WELLS FARGO BANK,
                           )   N.A., WELLS FARGO HOME
                           )   MORTGAGE, INC., AND WELLS
                           )   FARGO HOME MORTGAGE OF HAWAII,
                           )   LLC'S MOTION TO DISMISS
                           )   PLAINTIFF'S SECOND AMENDED
                           )   COMPLAINT; AND (3) DENYING
                           )   DEFENDANT SAMP, LLC'S MOTION
                           )   TO DISMISS SECOND AMENDED
_____ )   COMPLAINT

ORDER (1) GRANTING IN PART AND DENYING IN PART DEFENDANTS
WELLS FARGO BANK, N.A., WELLS FARGO HOME MORTGAGE, INC.,
AND WELLS FARGO HOME MORTGAGE OF HAWAII, LLC'S MOTION TO
DISMISS SECOND AMENDED COMPLAINT; (2) DENYING DEFENDANT SAMP,
LLC'S SUBSTANTIVE JOINDER IN DEFENDANTS WELLS FARGO BANK, N.A.,
WELLS FARGO HOME MORTGAGE, INC., AND WELLS FARGO HOME
MORTGAGE OF HAWAII, LLC'S MOTION TO DISMISS PLAINTIFF'S
SECOND AMENDED COMPLAINT; AND (3) DENYING DEFENDANT
SAMP, LLC'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

I.       INTRODUCTION.

        Plaintiff Rosa E. Soriano brings suit against

Defendants Wells Fargo Bank, N.A. ("WF Bank"), Wells Fargo Home

Mortgage, Inc. ("WFHM"), and Wells Fargo Home Mortgage of Hawaii,

LLC ("WFHM Hawaii") (collectively, "Wells Fargo Defendants"), as

well as against SAMP, LLC ("SAMP"), for an allegedly wrongful foreclosure relating to property that she owned.  Soriano alleges that, although she complied with Wells Fargo Defendants' instructions to cure her indebtedness, they nevertheless sold the property to SAMP without notifying her of the foreclosure proceedings.

Wells Fargo Defendants now move to dismiss the Second Amended Complaint ("SAC").  <u>See</u> Defs. Wells Fargo Bank, N.A., Wells Fargo Home Mortgage, Inc., and Wells Fargo Home Mortgage of Hawaii, LLC's Mot. to Dismiss Pl.'s Second Am. Compl. filed on Dec. 16, 2011 (the "WF Motion"), ECF No. 70.  SAMP joins in the WF Motion and files its own motion to dismiss.  <u>See</u> Def. SAMP, LLC's Substantive Joinder in Defs. Wells Fargo Bank, N.A., Wells Fargo Home Mortgage, Inc., and Wells Fargo Home Mortgage of Hawaii, LLC's Mot. to Dismiss Pl.'s Second Am. Compl. filed on Dec. 16, 2011 (the "SAMP Joinder"), ECF No. 71; Def. SAMP, LLC's Mot. to Dismiss Second Am. Compl., filed Dec. 16, 2011 (the "SAMP Motion"), ECF No. 67.

The court GRANTS IN PART and DENIES IN PART the WF Motion and DENIES the SAMP Joinder.  The court also DENIES the SAMP Motion without prejudice.

II.     BACKGROUND.

Soriano asserts wrongdoing under various legal theories, including fraud and negligence, in connection with the

handling of her first and second mortgage loans. Those loans were not made by the same Wells Fargo entity, and possibly not serviced by the same Wells Fargo entity. Some of the allegations underlying Soriano's claims suggest that, among Wells Fargo Defendants, the right hand did not know what the left hand was doing.

Soriano purchased property on Kapolei Parkway, in Ewa Beach, Hawaii 96706, Tax Map Key No. (1) 9-1-127-008, on or around November 17, 2003. SAC ¶ 8, ECF No. 66. Soriano says she bought the property (presumably with her husband) as her principal residence and lived there for several years. Id. ¶ 18. Soriano alleges that the purchase "was financed through" WFHM Hawaii and secured by a first mortgage on the property. The mortgage was then allegedly assigned to WFHM. Id. ¶ 9. Soriano says that WF Bank required her to take out a second loan for $47,098, secured by a second mortgage on the property. Id. ¶ 10. Soriano claims that she was not given copies of loan documents (including the second mortgage) for the second loan. Id. According to the SAC, WF Bank is now characterizing the second loan as a home equity line of credit that she could terminate on written notice to the lender if the account was paid in full. Id. ¶ 11.

Soriano alleges that she paid off the balance of her second loan in 2004 and orally asked WF Bank to close the loan

3

and release the second mortgage. Id. ¶ 13. She says that WF Bank accepted the payment and agreed to close the account and release the second mortgage without asking for anything in writing. Id. ¶¶ 14-15. Soriano alleges that the second loan was credited with her payment in full in 2005 and that she relied on WF Bank's statements that it had closed the loan and had released the second mortgage. Id. ¶¶ 16-17.

In 2006, Soriano's husband died, and she thereafter fell behind on payments on her first loan. Id. ¶¶ 20-21. She alleges that, in 2008, someone from a Wells Fargo entity made an unsolicited call to her, offering a home equity credit line. Id. ¶ 22. Soriano accepted, and the Wells Fargo entity wired $45,000 to her account. Id. ¶¶ 23, 25. Soriano alleges that she did not know which Wells Fargo entity was making the offer, did not receive any documentation regarding the offer, and was not asked to submit anything in writing. Id. ¶¶ 23-26. She says that she believed that she had entered into a new loan with a new second mortgage, although she realizes that WF Bank characterizes the loan as an additional draw on her 2003 home equity line of credit. Id. ¶¶ 27-28.

Soriano alleges that WF Bank, WFHM, and an unspecified Wells Fargo entity made it appear that each was collecting payments she made, and that she was never certain which entity she was dealing with. Id. ¶ 30. She says that WF Bank used the

4

names "Wells Fargo Home Mortgage" and "Wells Fargo" when collecting the second mortgage loan. Id. ¶ 31. The letters from WF Bank to Soriano allegedly indicated that WF Bank was a debt collector governed by the Fair Debt Collection Practices Act ("FDCPA"). Id. ¶ 32. Soriano alleges that a Wells Fargo entity acquired the loan and/or serviced the loan after it was in default. Id. ¶ 33.

According to Soriano, during 2009 and 2010, she spoke with employees at one or more Wells Fargo entities at least 25 times while trying to modify her loans, and someone at a Wells Fargo entity indicated that the entity would modify the loans. Id. ¶ 34. Soriano says that she was told and understood that "Wells Fargo" was collecting her loans, and she only now understands that she was dealing with either WF Bank or WFHM, or both. Id. ¶¶ 35-36.

Soriano alleges that, on or around March 9, 2010, WFHM, WF Bank, and/or a Wells Fargo entity informed her in writing that they would modify her loan. Id. ¶ 38; letter from WFHM to R. Soriano (Mar. 9, 2010), attached as Exhibit "A" to the SAC, ECF No. 66-1. Soriano says that she sent the requested paperwork and payment to the Wells Fargo entity. SAC ¶¶ 39-40, ECF No. 66. The proposed loan modification apparently concerned only the first mortgage.

Soriano alleges that, in or around mid-2010, someone at a Wells Fargo entity told her that, because she had failed to submit requested documents, it planned to foreclose on her property. Id. ¶ 43. She says that she had actually sent the requested documents at least seven times. She further says that, on or around June 18, 2010, WFHM, WF Bank, and/or a Wells Fargo entity sent her a letter confirming that it would enter into a Forbearance Agreement. Id. ¶ 46; letter from WFHM to R. Soriano (June 18, 2010), attached as Exhibit "B" to the SAC, ECF No. 66-2. Soriano says that she complied with the terms of that agreement, including making monthly payments of $1,200. SAC ¶ 47, ECF No. 66.

In or around the fall of 2010, Wells Fargo Defendants allegedly told Soriano that there was no record of a foreclosure proceeding against the property and assured her that as long as her request for a loan modification was being actively reviewed, there would be no foreclosure. Id. ¶ 48.

Soriano alleges that, on or around October 9, 2010, WF Bank, WFHM, or a Wells Fargo entity demanded that she pay $21,577.49 to stop a foreclosure of the property. Id. ¶ 49. Soriano alleges that she paid the requested sum by giving authorization to withdraw the funds from her account. Id. She says that she received a confirmation number for that payment. Id.

Soriano says that, about two weeks later, she learned that the money had not been withdrawn from her account. Id. ¶ 50. Someone from a Wells Fargo entity allegedly told her that she might qualify for a new program requiring a lower monthly payment and that information about the exact amount would be provided at a later date. Id. ¶ 52.

By this time, Soriano was no longer living on the property and was instead renting it out. She says that her tenants informed her that they had been told to vacate the property because it had been sold. Id. ¶ 54. Soriano allegedly tried to contact the purported purchaser, and was directed to Chad Waters, CEO of SAMP, LLC. Id. ¶¶ 56-57. Waters allegedly did not return any of Soriano's calls. Id. ¶ 58.

Also in October 2010, an employee at a Wells Fargo entity allegedly told Soriano that there was no record of a foreclosure or sale of her property, and that her loan was still being actively reviewed. Id. ¶ 59. The court notes that any such statement appears to have been made with respect to the first mortgage. Soriano states that WF Bank and WFHM now say that the foreclosure sale did indeed occur on October 4, 2010. Id. ¶ 60.

In or around December 2010, a Wells Fargo entity allegedly requested payment of $5,788 to place Soriano in the new program previously mentioned. Id. ¶ 62. Soriano claims that she

sent the requested payment.  Id. ¶ 63; Western Union Customer
Receipt, attached as Exhibit "C" to the SAC, ECF No. 66-3.
Someone at a Wells Fargo entity allegedly told her that her loan
had been transferred to loss mitigation for review for a possible
loan modification and that the foreclosure would be postponed.
SAC ¶ 62, ECF No. 66.  Soriano attaches a copy of a Wells Fargo
record noting that "the foreclosure sale was canceled."  Id.
¶ 63; consolidated notes log, attached as Exhibit "F" to the SAC,
ECF No. 66-6.

Soriano alleges that, in January 2011, her tenants told
her that a representative of Mokuaina Properties, LLC, had told
them that the property had been purchased at a foreclosure sale
by SAMP and that they had to vacate the property.  SAC ¶ 64, ECF
No. 66; letter from C. Waters to Nathan et al. (Dec. 29, 2010),
attached as Exhibit "D" to the SAC, ECF No. 66-4.  The tenants
were allegedly also served with a complaint for summary
possession.  SAC ¶ 66, ECF No. 66.  The foreclosure sale appears
to have related to Soriano's second mortgage.

Around this time, Soriano says that she spoke with
Wells Fargo Defendants' counsel, the law firm of Routh Crabtree
Olsen, P.S., who allegedly informed her that the loan had been
reinstated and the foreclosure sale canceled.  Id. ¶ 68.  Soriano
says that, on or around January 10, 2011, someone from a Wells
Fargo entity confirmed that the loan had been reinstated and that

there was to be no foreclosure sale.  Id. ¶ 69.  Soriano was then allegedly told by Wells Fargo Defendants and their attorneys that her loan had been paid in full, in the amount of $244,204, but that they did not know who had paid it.  Id. ¶¶ 70-71.  A letter from WFHM dated January 8, 2011, also told Soriano that the loan had been satisfied.  Id. ¶ 72; letter from WFHM to R. Soriano (Jan 8, 2011), attached as Exhibit "E" to the SAC, ECF No. 66-5. The loan was presumably paid by the buyer at a foreclosure sale initiated by Wells Fargo on the second mortgage.

Soriano alleges that SAMP now holds title to the property, but that the title was improperly transferred to SAMP, which knew or should have known that the foreclosure sale was improper.  SAC ¶¶ 74-76, ECF No. 66.

III.    STANDARD.

Under Rule 12(b)(6), a court is generally limited to reviewing the contents of the complaint.  Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001); Campanelli v. Bockrath, 100 F.3d 1476, 1479 (9th Cir. 1996).  If matters outside the pleadings are considered, the Rule 12(b)(6) motion is treated as one for summary judgment.  See Keams v. Tempe Tech. Inst., Inc., 110 F.3d 44, 46 (9th Cir. 1997); Anderson v. Angelone, 86 F.3d 932, 934 (9th Cir. 1996).  However, courts may "consider certain materials--documents attached to the complaint, documents incorporated by reference in the complaint, or matters

of judicial notice--without converting the motion to dismiss into a motion for summary judgment." United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003). Documents whose contents are alleged in a complaint and whose authenticity is not questioned by any party may also be considered in ruling on a Rule 12(b)(6) motion. See Marder v. Lopez, 450 F.3d 445, 448 (9th Cir. 2006); Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005).

On a Rule 12(b)(6) motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. Fed'n of African Am. Contractors v. City of Oakland, 96 F.3d 1204, 1207 (9th Cir. 1996). However, conclusory allegations of law, unwarranted deductions of fact, and unreasonable inferences are insufficient to defeat a motion to dismiss. Sprewell, 266 F.3d at 988. Additionally, the court need not accept as true allegations that contradict matters properly subject to judicial notice or allegations contradicting the exhibits attached to the complaint. Id. Dismissal under Rule 12(b)(6) may be based on either: (1) lack of a cognizable legal theory, or (2) insufficient facts under a cognizable legal theory. Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1988) (citing Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-34 (9th Cir. 1984)).

To survive a Rule 12(b)(6) motion to dismiss, factual allegations must be enough to raise a right to relief above the speculative level, assuming all allegations in the complaint are true even if doubtful in fact. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Accord Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (internal citations omitted). The complaint must "state a claim to relief that is plausible on its face." Id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. 678.

The Ninth Circuit has recently stated,

First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are

> taken as true must plausibly suggest an
> entitlement to relief, such that it is not
> unfair to require the opposing party to be
> subjected to the expense of discovery and
> continued litigation.

Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).


IV.     THE WF MOTION AND SAMP JOINDER.

        A.    Soriano Adequately Pleads A Violation Of The
              FDCPA.

        In Count I of the SAC, Soriano asserts a violation of

the Fair Debt Collection Practices Act ("FDCPA").  The FDCPA

provides, among other things, safeguards designed to protect

consumers from unscrupulous debt collection practices.  Although

Wells Fargo Defendants seek dismissal on the ground that their

actions do not fall within the purview of the FDCPA, they fail to

establish on the present record that the FDCPA is inapplicable to

them.  The court therefore denies the motion to dismiss Count I.

              1.    It is Unclear Whether Any Wells Fargo
                    Defendant is A "Debt Collector."

        Wells Fargo Defendants first argue that they are not

"debt collectors" subject to the FDCPA.  The FDCPA defines "debt

collector" as follows:

              (6) The term "debt collector" means any
              person who uses any instrumentality of
              interstate commerce or the mails in any
              business the principal purpose of which is
              the collection of any debts, or who regularly
              collects or attempts to collect, directly or
              indirectly, debts owed or due or asserted to
              be owed or due another.  Notwithstanding the

exclusion provided by clause (F) of the last
sentence of this paragraph, the term includes
any creditor who, in the process of
collecting his own debts, uses any name other
than his own which would indicate that a
third person is collecting or attempting to
collect such debts. For the purpose of
section 1692f(6) of this title, such term
also includes any person who uses any
instrumentality of interstate commerce or the
mails in any business the principal purpose
of which is the enforcement of security
interests. The term does not include--

> (A) any officer or employee of a
> creditor while, in the name of the
> creditor, collecting debts for such
> creditor;

> (B) any person while acting as a
> debt collector for another person, both
> of whom are related by common ownership
> or affiliated by corporate control, if
> the person acting as a debt collector
> does so only for persons to whom it is
> so related or affiliated and if the
> principal business of such person is not
> the collection of debts;

> . . . .

> (F) any person collecting or
> attempting to collect any debt owed or
> due or asserted to be owed or due
> another to the extent such activity (i)
> is incidental to a bona fide fiduciary
> obligation or a bona fide escrow
> arrangement; (ii) concerns a debt which
> was originated by such person; (iii)
> concerns a debt which was not in default
> at the time it was obtained by such
> person; or (iv) concerns a debt obtained
> by such person as a secured party in a
> commercial credit transaction involving
> the creditor.

15 U.S.C. § 1692a(6).

Soriano alleges that WF Bank and WFHM had each "been attempting to collect an alleged debt from Plaintiff using a name other than its own indicating that a third person is collecting or attempting to collect their debts." SAC ¶¶ 78-79, ECF No. 66. She alleges that WF Bank and WFHM are debt collectors and alleges that WFHM and WF Bank violated §§ 1692f, 1692e, and 1692d. Id. ¶¶ 80-84.

Mortgagees and mortgage servicing companies frequently are found not be to "debt collectors" under the FDCPA. See Foth v. BAC Home Loans Serv., LP, Civ. No. 11-00114 DAE-BMK, 2011 WL 3439134, *7 (D. Haw. Aug. 4, 2011). See also Perry v. Stewart Title Co., 756 F.2d 1197, 1208 (5th Cir. 1985) ("The legislative history of section 1692a(6) indicates conclusively that a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned.").

However, it is unclear on the present record which, if any, Wells Fargo Defendant falls outside the FDCPA's definition of "debt collector." Any Wells Fargo entity that engaged in collection of Soriano's debt may well be exempted, but the court cannot determine whether that is so.

First, to the extent any Wells Fargo Defendant was collecting a debt that it originated, it would fall under

§ 1692a(6)(F), which excludes from the definition of "debt collector" "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . (ii) concerns a debt which was originated by such person." For example, assuming WF Bank is the mortgagee of the loan in question (either a second mortgage or a home equity line of credit), WF Bank would not be a "debt collector" if attempting to collect the debt from Soriano.

The problem is that the record does not clearly indicate which Wells Fargo Defendant acted only as the mortgagee or which was collecting on a loan. Soriano alleges that she only knew that she was communicating with "Wells Fargo" and did not know which specific entity was working to modify her loans or to collect on her debt. Wells Fargo Defendants make no attempt to clarify which entity (or entities) communicated with Soriano. At the hearing on the present motion, the court queried counsel for Wells Fargo Defendants as to the roles of the various Wells Fargo Defendants, but obtained no clarification in this regard. Accordingly, the court cannot say whether any of the Wells Fargo entities was collecting on its own debt.

Second, to the extent one Wells Fargo entity may have been trying to collect a debt on behalf of another Wells Fargo entity, the collecting entity may be excluded from the definition of "debt collector" if it was "acting as a debt collector for

another person, both of whom are related by common ownership or affiliated by corporate control, if the person acting as a debt collector does so only for persons to whom it is so related or affiliated and if the principal business of such person is not the collection of debts." 15 U.S.C. § 1692a(6)(B). For example, if indeed WF Bank was the mortgagee and WFHM was an affiliate collecting on WF Bank's behalf, WFHM is not a "debt collector" if it collected only WF Bank's debts and is not principally a debt collector.

However, the court cannot determine whether the Wells Fargo entity collecting on the loan was an "affiliate" of the mortgagee's. As noted above, there is no indication in the record which Wells Fargo Defendant collected the debt and which Wells Fargo entity was the creditor. At first blush, it might appear that WFHM collected a debt owed to WF Bank.[1] However WFHM is not excluded from this definition of "debt collector" solely

---

[1] For example, Exhibit "B" to the SAC is a letter from WFHM to Soriano, telling Soriano that "you are indebted to Wells Fargo Bank, NA by reason of your default." Letter from WFHM to R. Soriano (June 18, 2010), attached as Exhibit "B" to the SAC. The letter appears to originate from WFHM and also states that "Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A."

Wells Fargo Defendants' Corporate Disclosure Statement similarly states that Wells Fargo Home Mortgage, Inc., is a "division" of Wells Fargo, Bank, N.A. See Def. Wells Fargo Bank, N.A., Wells Fargo Home Mortgage, Inc. and Wells Fargo Home Mortgage of Hawaii, LLC's Corporate Disclosure, ECF No. 14. Because WFHM appears from its name to be a corporation, a "division" does not appear to be merely a department.

by reason of collecting on behalf of a related entity. To fall under that exclusion, WFHM must collect debts only for entities to which it is related or affiliated and must not have debt collection as its principal business. See 15 U.S.C. § 1692a(6)(B).

In considering the exemption in § 1692(6)(B), the Ninth Circuit noted that a court must make "several factual determinations." The court must make determinations "as to whether [the debt collector] is affiliated with the actual creditor, as to whether [the debt collector] collects debts for non-affiliated entities, or as to whether debt collection is [the debt collector's] principal business." Fox v. Citicorp Credit Serv., Inc., 15 F.3d 1507, 1514 (9th Cir. 1994).

In Citicorp, the Ninth Circuit was faced with an FDCPA claim involving credit card debt that Citibank had referred for collection to its affiliate, Citicorp Credit Services. The plaintiffs brought claims against Citicorp and Citicorp's attorney as purported debt collectors. The district court granted summary judgment to Citicorp and its attorney. On appeal, Citicorp raised a matter not raised before the district court: that an additional reason that any FDCPA claim was not cognizable against Citicorp was that Citicorp was an in-house collector not covered by the FDCPA. The Ninth Circuit reversed the grant of summary judgment, noting that the debtors had "not

had a chance to demonstrate the existence of a material factual

dispute" as to the factors necessary to qualify for that

exemption from the FDCPA.  15 F.3d at 1514-15.

This court is similarly unable to make the required

factual determinations on the present record.[2]

This appears to be a matter better suited to a summary

judgment motion than to the present motion to dismiss.  Wells

Fargo Defendants, citing no cases in support of their general

position and presenting no specific relevant facts, contend that

"Wells Fargo Defendants were acting in their capacities as

mortgagees and/or loan servicers and would therefore be exempt

from FDCPA requirements."  WF Motion at 8, ECF No. 70.

The court is not persuaded that Soriano's SAC is

deficient on this point.  Soriano pleads the minimally required

facts in the Complaint suggesting that Wells Fargo Defendants are

"debt collectors."  Cf. Foth, 2011 WL 3439134, at *7 (noting that

the plaintiffs had filed a "confusing and conclusory" complaint

that "alleges no facts to suggest that any of the Defendants are,

_____

[2] In her Opposition, Soriano attaches what appears to be an
unauthenticated email between her counsel and another attorney in
an unrelated case, ostensibly for the purpose of showing that WF
Bank collects debts on behalf of unrelated entities.  See e-mail
from P. McHenry to J. Paer (May 21, 2010), attached as Exhibit
"B" to Pl.'s Mem. in Opp'n to Def. Wells Fargo Bank, N.A., Wells
Fargo Home Mortgage, Inc., and Wells Fargo Home Mortgage of
Hawaii, LLC's Mot. to Dismiss Second Am. Compl. and in Opp'n to
SAMP LLC's Joinder ("Opp'n to WF Motion"), ECF No. 87-2.  This
exhibit is not relevant to the issue of whether Soriano's
allegations are sufficient.

in fact, 'debt collectors' within the meaning of the FDCPA."). Wells Fargo Defendants point to no law putting the burden on a plaintiff of proactively refuting in a complaint the applicability of every possible FDCPA exemption that a defendant might later raise as a defense. Soriano sufficiently alleges that Wells Fargo Defendants were attempting to collect her debt. On the present motion, it is Wells Fargo Defendants' burden to establish that Soriano fails to state a claim. To the extent Wells Fargo Defendants rely on the "affiliate" exemption in the FDCPA in seeking dismissal of Count I, the court finds no insufficiency in the pleading.

Third, Wells Fargo Defendants are not "debt collectors" under the FDCPA if they were loan servicers that were servicing the loans before they went into default and thereafter sought to collect the debt. Although this exemption from the definition of "debt collector" could have been provided for in clearer statutory language, the loan servicer exemption is discernible from the legislative history of § 1692a(6): "Finally, the committee does not intend the definition [of debt collector] to cover the activities of . . . mortgage service companies and others who service outstanding debts for others, so long as the debts were not in default when taken for servicing." S. Rep. 95-382, 95th Cong., 1st Sess. 3, <u>reprinted in</u> 1977 U.S. Code Cong. & Ad. News 1695, 1698. <u>See</u> <u>Perry v. Stewart Title Co.</u>, 756 F.2d

1197, 1208 (5th Cir. 1985) ("The legislative history of section 1692a(6) indicates conclusively that a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned."); <u>Lettenmaier v. Fed. Home Loan Mortg. Corp.</u>, Civ. No. 11-156-HZ, 2011 WL 3476648, at *13 (D. Or. Aug. 8, 2011) ("mortgage servicers are not debt collectors only when the underlying loan is taken for servicing <u>before</u> the default"); <u>Radford v. Wells Fargo Bank</u>, Civ. No. 10-00767 SOM-KSC, 2011 WL 1833020, at *15 (D. Haw. May 13, 2011) (original lender, transferee Wells Fargo, nominee MERS, and mortgage servicer are not "debt collectors" under the FDCPA).

Soriano alleges that "'Wells Fargo' acted as a loan servicer and acquired the loan and/or servicing after the loan was in default." SAC ¶ 33, ECF No. 66. Although Soriano does not provide detail as to when the loan was acquired for servicing or when the loan went into default, this allegation is accepted as true on this motion to dismiss. Whether Wells Fargo Defendants were loan servicers exempt from the FDCPA definition of "debt collectors" is a matter not discernible on Wells Fargo Defendants' motion for failure to state a claim.

2.   Wells Fargo Defendants' Institution of a
        Nonjudicial Foreclosure did Not By Itself
        Render Them "Debt Collectors," But Soriano
        Also Alleges Collection Activities
        Independent of a Nonjudicial Foreclosure.

Nonjudicial foreclosure proceedings are not "action[s]
to collect a debt" under the FDCPA.  This district has repeatedly
held that a nonjudicial foreclosure does not constitute debt
collection under the FDCPA.  See Caraang v. PNC Mortg., 795 F.
Supp. 2d 1098, 1107 (D. Haw. 2011) ("this district court has
ruled that a lender pursuing a non-judicial foreclosure is not
attempting to collect a debt for purposes of the FDCPA"); Arakaki
v. One West Bank FSB, Civ. No. 10-00103 JMS-KSC, 2010 WL 5625969,
at *6 (D. Haw. Sept. 8, 2010) ("non-judicial foreclosures are not
'actions to collect debt' (at least for purposes of the FDCPA)").
Any nonjudicial foreclosure by Wells Fargo Defendants falls
outside the FDCPA.

However, this rule is not, without more, fatal to
Soriano's FDCPA claim.  Wells Fargo Defendants' attempts to
collect a debt from Soriano unrelated to or prior to institution
of the nonjudicial foreclosure proceedings are not exempted from
the FDCPA.  As Soriano points out in her Opposition, Wells Fargo
Defendants were working with Soriano to modify her loan and cure
the default, independent of the nonjudicial foreclosure.  See
Opp'n to WF Motion at 8, ECF No. 87.  Construing the facts
alleged in the Complaint in the light most favorable to Soriano,

the court cannot say that all attempts to collect the debt are exempted from the FDCPA because they related to the eventual nonjudicial foreclosure.

   3.   Wells Fargo Defendants Did Not Indicate That
        A Third Party Was Collecting Their Debt.

        Although the court cannot determine whether Wells Fargo Defendants were "debt collectors" and thus declines to dismiss Count I against Wells Fargo Defendants, it does reject Soriano's argument that Wells Fargo Defendants should be deemed to have conceded that they were acting as third parties collecting others' debts. Soriano attempts to keep Wells Fargo Defendants within the ambit of the FDCPA by alleging that, when collecting the debt, they used names other than their own. SAC ¶¶ 78-79, ECF No. 66. The FDCPA includes as a debt collector "any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts." 15 U.S.C. § 1692a(6). Essentially, Soriano is claiming that the shorthand name "Wells Fargo," used instead of "Wells Fargo Home Mortgage" or "Wells Fargo Bank, N.A." was an indication that a "third person [was] collecting" the debt. The shorthand name does not appear to this court to be a reference to a third party. In the exhibits attached to the SAC, for example, WFHM is identified in the letterhead of its correspondence, but refers to itself as "Wells Fargo" in the text of the letter. This is not a name

change or an indication that a third party was collecting any
debt.

>    4.    The Use Of An FDCPA Disclaimer Does Not
>          Create A Presumption Of Applicability Of The
>          FDCPA.

Soriano also points to Wells Fargo Defendants' "form"
or "boilerplate" statement in correspondence that they were
required to do certain things by the FDCPA. Soriano asserts that
the statement is an admission that binds Wells Fargo Defendants
to compliance with the provisions of the FDCPA.

A statement that a party includes in a document in an
abundance of caution is not a waiver of defenses. That is, Wells
Fargo Defendants did not make themselves subject to the FDCPA
simply by acknowledging the FDCPA's requirements just in case
those provisions applied to them. Such a statement does not
render the FDCPA applicable. See Boosahda v. Providence Dane
LLC, 2010 WL 268345, at *3 (4th Cir. Jan 31, 2012) ("a debt
collector should not be penalized for taking the precaution of
including the disclaimer within its initial written communication
to the debtor, in the event the debt is subject to the FDCPA");
Gburek v. Litton Loan Serv. LP, 614 F.3d 380, 386 n.3 (7th Cir.
2010) (a reference to FDCPA requirements "does not automatically
trigger the protections of the FDCPA, just as the absence of such
language does not have dispositive significance").

To summarize, the motion to dismiss Count I is denied to the extent Wells Fargo Defendants contend that they fall under exemptions for lenders collecting debts they themselves originated, debt collectors affiliated with creditors, and loan servicers. The denial of the motion to dismiss Count I is not based on Wells Fargo Defendants' shorthand use of "Wells Fargo" or on their inclusion of FDCPA requirements in correspondence.

### B. Soriano Does Not Adequately Plead Unfair Or Deceptive Acts And Practices.

In Count II, Soriano asserts that Wells Fargo Defendants violated chapters 480, 443, and 443B of the Hawaii Revised Statutes by engaging in unfair or deceptive acts and practices ("UDAP"). Wells Fargo Defendants argue that the UDAP claim is barred by the statute of limitations and was not pled with the required particularity. The court is not persuaded by the limitations argument but agrees that the alleged fraud is not pled with sufficient particularity.

A UDAP claim must be brought "within four years after the cause of action accrues." Haw. Rev. Stat. § 482-24(a). Wells Fargo Defendants argue that the claim accrued at the time of the loan closing on November 17, 2003, over four years before Soriano filed her Complaint on January 21, 2011. See WF Motion at 11, ECF No. 70.

Soriano alleges that Wells Fargo Defendants acted wrongfully within the four-year statute of limitations. Soriano

24

alleges that she fell behind on payments under her first mortgage and was solicited by a Wells Fargo entity to take out a $45,000 loan or line of credit in 2008. <u>See</u> SAC ¶ 22, ECF No. 66. She also alleges that she spoke with agents for a Wells Fargo entity or entities at least 25 times in 2009 and 2010 while trying to modify her loans. <u>See</u> <u>id.</u> at ¶ 34. These allegations, the earliest alleged acts that underlie the UDAP claim, occurred within four years of January 21, 2011. Claim II is therefore within the statute of limitations. However, to the extent that any part of Count II is based solely on the origination of the first mortgage transaction in 2003, that part is barred by the statute of limitations.

It is not at all clear what specific actions (occurring after Soriano took out the first mortgage loan) form the basis of Count II. To the extent Soriano's UDAP claim is based on allegedly fraudulent misrepresentations, those must be pled with particularity. <u>See</u> <u>Smallwood v. NCsoft Corp.</u>, 730 F. Supp. 2d 1213, 1232-33 (D. Haw. 2010)(regarding pleading requirements for chapter 480). <u>See also</u> <u>Vess v. Ciba-Geigy Corp. USA</u>, 317 F.3d 1097, 1106 (9th Cir. 2003)(regarding pleading requirements when part of a claim is based on allegations of fraud). Soriano does not identify particular acts or statements in Count II. Instead, she uses what are sometimes referred to as "shotgun" or "puzzle" pleadings. That is, she incorporates numerous allegations by

reference into each claim for relief.  This technique requires
her opponents and the court to complete a puzzle by matching up
statements with reasons they are false.  Whether the Ninth
Circuit considers this technique a way to satisfy the
particularity requirements set forth in Rule 9(b) of the Federal
Rules of Civil Procedure is unclear.  <u>See</u> <u>Prim Ltd. Liability Co.</u>
<u>v. Pace-O-Matic, Inc.</u>, Civil No. 10-00617 SOM-KSC, 2012 WL
263116, at *5-6 (D. Haw. Jan. 30, 2012).

Regarding fraud claims, to survive a motion to dismiss,
a plaintiff must allege that (1) false representations were made
by the defendant, (2) with knowledge of their falsity (or without
knowledge of their truth or falsity), (3) in contemplation of
plaintiff's reliance upon them, and that (4) plaintiff
detrimentally relied on them.  <u>Hawaii's Thousand Friends v.</u>
<u>Anderson</u>, 70 Haw. 276, 286, 768 P.2d 1293, 1301 (1989).

The circumstances constituting the alleged fraud must
be pled with particularity.  Fed. R. Civ. P. 9(b).[3]  Rule 9(b)'s
purposes are to provide defendants with adequate notice to allow
them to defend against a charge, to protect those whose

---

[3] Rule 9(b) provides that "[m]alice, intent, knowledge, and
other conditions of a person's mind may be alleged generally."
Fed. R. Civ. P. 9(b).  The Ninth Circuit has stated, "While the
factual circumstances of the fraud itself must be alleged with
particularity, the state of mind-or scienter-of the defendants
may be alleged generally."  <u>Odom v. Microsoft Corp.</u>, 486 F.3d
541, 554 (9th Cir. 2007) (citing <u>In re GlenFed, Inc., Sec.</u>
<u>Litig.</u>, 42 F.3d 1541, 1547 (9th Cir. 1994)).

reputation would be harmed as a result of being subject to fraud charges, and to prohibit plaintiffs from unilaterally imposing upon the court, the parties, and society social and economic costs without some factual basis. <u>Kearns v. Ford Motor Co.</u>, 567 F.3d 1120, 1125 (9th Cir. 2009).

An allegation of fraud is sufficient if it "identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." <u>Neubronner v. Milken</u>, 6 F.3d 666, 672 (9th Cir. 1993) (internal citations and quotations omitted). To sufficiently identify the circumstances that constitute fraud, a plaintiff must identify such facts as the times, dates, places, or other details of the alleged fraudulent activity. <u>Id.</u> A plaintiff must plead these evidentiary facts and must explain why the alleged conduct or statements are fraudulent:

> Averments of fraud must be accompanied by "the who, what, when, where, and how" of the misconduct charged. <u>Cooper v. Pickett</u>, 137 F.3d 616, 627 (9th Cir. 1997) (internal quotation marks omitted). "[A] plaintiff must set forth more than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is misleading about the statement, and why it is false." <u>Decker v. GlenFed, Inc. (In re GlenFed, Inc. Sec. Litig.)</u>, 42 F.3d 1541, 1548 (9th Cir. 1994).

<u>Vess v. Ciba-Geigy Corp. USA</u>, 317 F.3d 1097, 1106 (9th Cir. 2003).

Soriano does not meet the particularity requirements of Rule 9(b). Indeed, even if Soriano is not basing her UDAP claim entirely on fraudulent acts or statements, the court cannot determine what the UDAP claim rests on. Accordingly, Count II is dismissed as inadequately pled.

### C. Soriano Fails To State A Claim For Breach Of Fiduciary Duty

Soriano alleges in Count III that WFHM and WFB owed her a fiduciary duty regarding her loan modification. Because lenders owe no fiduciary duty to borrowers, the court dismisses Count III.

Before a plaintiff may sue a defendant for breach of a duty, the plaintiff must establish that the defendant owed a duty to the plaintiff. The existence of a duty is entirely a question of law. <u>Bidar v. Amfac, Inc.</u>, 66 Haw. 547, 552, 669 P.2d 154, 158 (1983). In determining whether a duty is owed, the court "must weigh the considerations of policy which favor the appellants' recovery against those which favor limiting the appellees' liability." <u>Blair v. Ing</u>, 95 Haw. 247, 260, 21 P.3d 452, 465 (2001). This district has held that lenders do not owe a fiduciary duty to borrowers:

> Lenders generally owe no fiduciary duties to their borrowers. <u>See, e.g.</u>, <u>Nymark v. Heart Fed. Sav. & Loan Ass'n</u>, 283 Cal. Rptr. 53, 54 n.1 (Cal. App. 1991) ("The relationship between a lending institution and its borrower-client is not fiduciary in nature."); <u>Miller v. U.S. Bank of Wash.</u>, 865

P.2d 536, 543 (Wash. App. 1994) ("The general
rule . . . is that a lender is not a
fiduciary of its borrower."); <u>Huntington
Mortg. Co. v. DeBrota</u>, 703 N.E.2d 160, 167
(Ind. App. 1998) ("A lender does not owe a
fiduciary duty to a borrower absent some
special circumstances."); <u>Spencer v. DHI
Mortg. Co.</u>, 642 F. Supp. 2d 1153, 1161 (E.D.
Cal. 2009) ("Absent 'special circumstances' a
loan transaction 'is at arms-length and there
is no fiduciary relationship between the
borrower and lender.'") (quoting <u>Oaks Mgmt.
Corp. v. Super. Ct.</u>, 51 Cal. Rptr. 3d 561
(Cal. App.2006)); <u>Ellipso, Inc. v. Mann</u>, 541
F. Supp. 2d 365, 373 (D.D.C. 2008) ("[T]he
relationship between a debtor and a creditor
is ordinarily a contractual relationship
. . . and is not fiduciary in nature.")
(citation omitted).

<u>McCarty v. GCP Mgmt., LLC</u>, Civil No. 10-00133 JMS/KSC, 2010 WL

4812763, at *5 (D. Haw. Nov. 17, 2010).

Soriano has not pled any facts alleging that her

relationship with Wells Fargo Defendants was anything other than

the standard, arms-length creditor-debtor relationship.  Soriano

argues that Wells Fargo Defendants "did not simply make a

mortgage loan; they took it upon themselves to make numerous

false promises which had the effect of lulling Plaintiff into a

false sense of security, and then foreclosed upon her home

without her knowledge.  When it does that, it exceeds the scope

of its role as a mere money lender."  Opp'n to WF Motion at 12,

ECF No. 87.  Soriano cites no authority supporting this

proposition, and the court declines to impose a fiduciary duty on

lenders just because they solicit clients and allegedly make

representations regarding possible loan modifications.  Count III
is dismissed.

> ### D. Soriano Adequately Pleads Negligent Misrepresentation, But Not Fraud or Intentional Misrepresentation.

Wells Fargo Defendants contend that Soriano fails to
plead with particularity her claims for fraud and
misrepresentation (Count IV) and negligence (including negligent
misrepresentation) (Count V) against Wells Fargo Defendants.

In Count IV, Soriano alleges generally that Wells Fargo
Defendants made false and misleading statements, SAC ¶ 95, ECF
No. 66, and incorporates the allegations offered earlier in the
SAC.  No fraudulent statements are enumerated within Count IV.
Instead, Soriano relies on the "shotgun" or "puzzle" technique
this court discusses in connection with her UDAP claim.
Particularly because Soriano also alleges negligent
misrepresentation in part of Count IV and in Count V, it is
important for Wells Fargo Defendants to know which allegations
are relevant to fraud and which to negligence.  That distinction
cannot be made given the nature of Soriano's allegations.[4]

---

[4] For example, Soriano alleges that Wells Fargo Defendants
informed her that there was no record of any foreclosure on her
property and that there would be no foreclosure so long as she
made agreed-upon payments, SAC ¶ 48; that there was no record of
a foreclosure sale, id. ¶ 59; that the foreclosure sale was
postponed or canceled, id. ¶62; and that her loan was still in
active modification, id. ¶ 67.

Soriano's claim for negligent misrepresentation in part of Count IV and for negligence in Count V are not subject to Rule 9(b)'s particularity requirement. Although a negligent misrepresentation claim in some jurisdictions is subject to Rule 9(b), a negligent misrepresentation claim under Hawaii law is not. Compare Neilson v. Union Bank of Cal., N.A., 290 F. Supp. 2d 1101, 1141 (C.D. Cal. 2003) (analyzing negligent misrepresentation under California law and stating that it is "well-established in the Ninth Circuit that both claims for fraud and negligent misrepresentation must meet Rule 9(b)'s particularity requirements"), with Smallwood v. NCsoft Corp., 730 F. Supp. 2d 1213, 1231–32 (D. Haw. 2010) (holding that, because a negligent misrepresentation claim under Hawaii law does not require intent, it is not subject to Rule 9(b)) (citations omitted), and Peace Software, Inc. v. Hawaiian Elec. Co., Inc., Civ. No. 09-00408 SOM/LEK, 2009 WL 3923350, at *6–7 (D. Haw. Nov. 17, 2009) (stating that Rule 9(b)'s heightened pleading requirement is inapplicable to negligent misrepresentation under Hawaii law). The court therefore is less concerned about a "shotgun" pleading in that context and reads Count V as encompassing all alleged representations incorporated into Count V, as well as specific facts alleged in Count V. However, the court cautions Soriano that she may not, under the negligent misrepresentation or negligence rubric, seek to enforce any

31

alleged oral contract that the statute of frauds renders unenforceable. (The statute of frauds is more thoroughly discussed with respect to Count VI.)

In summary, the fraud portion of Count IV is dismissed. The negligent misrepresentation portion of Count IV and all of Count V remain, but may not be used as a means of skirting or nullifying any applicable provision of the statute of frauds.

E.   Soriano's Breach Of Contract Claim Is Not Cognizable.

Soriano alleges in Count VI that Wells Fargo Defendants breached an oral contract not to foreclose on her property without first notifying her. The court agrees with Wells Fargo Defendants that Count VI is barred by the statute of frauds and accordingly dismisses Count VI.

Soriano alleges that she and Wells Fargo Defendants "had an oral contract such that those Defendants would suspend any attempts to foreclose upon Plaintiff's property and would not re-institute foreclosure proceedings without first notifying Plaintiff." SAC ¶ 108, ECF No. 66. She further alleges that Wells Fargo Defendants "breached that agreement and foreclosed on Plaintiff[']s property and sold it at auction without notice to Plaintiff." Id. ¶ 109.

Under Hawaii's statute of frauds, "[n]o action shall be brought and maintained in any of the following cases: . . . (4) upon any contract for the sale of lands, tenements, or

hereditaments, or of any interest in or concerning them . . .
unless the promise, contract, or agreement, upon which the action
is brought, or some memorandum or note thereof, is in writing,
and is signed by the party to be charged therewith, or by some
person thereunto by the party in writing lawfully authorized."
Haw. Rev. Stat. § 656-1. The alleged oral contract involving
Wells Fargo Defendants' alleged promise not to foreclosure on
Soriano's property is subject to the statute of frauds and thus
must be memorialized in writing. It clearly concerns matters
related to an interest in land. See Restatement (Second) of
Contracts § 127.

Soriano argues that Exhibits "A" and "B" to the SAC are
written evidence of the contract she says she had with Wells
Fargo Defendants. Exhibit "A" is not an agreement to refrain
from foreclosing. Exhibit "A" provides preliminary requirements
and contemplates that an agreement will be sent to Soriano later
if a loan modification is ultimately approved. Thus, Exhibit "A"
states, "Please note that until you are approved for a
modification, normal default servicing will continue which
includes any foreclosure action that may be in process." It
further says that any foreclosure action will not be placed on
hold "until you have returned the signed agreement and the
required initial payment." Soriano appears to be asserting that
Exhibit "B" is the agreement that Exhibit "A" refers to. Both

documents refer to one loan number, 0036509545. Yet, Soriano herself recognizes that she actually had two loans. To the extent the purported agreement concerned only one mortgage loan, Soriano does not allege that she had a separate written agreement with respect to the other mortgage loan.

Soriano does not cite to any specific provision in the alleged contract that barred Wells Fargo Defendants from foreclosing on both mortgages. <u>See</u> <u>Otani v. State Farm Fire & Cas. Co.</u>, 927 F. Supp. 1330, 1335 (D. Haw. 1996) ("the complaint must, at a minimum, cite the contractual provision allegedly violated"). Given Soriano's failure to provide the court with evidence that she had a written agreement with Wells Fargo Defendants pursuant to which they promised not to foreclose on the particular mortgage that was the basis for the nonjudicial foreclosure, the court dismisses Count VI.

> F. Soriano Fails To Adequately Plead A Breach of the
> Covenant of Good Faith & Fair Dealing.

In Count VII, Soriano alleges a breach of the covenant of good faith and fair dealing. Because this court determines that there was no breach of contract, there can be no implied covenant of good faith and fair dealing that Wells Fargo Defendants could have breached.

In Hawaii, good faith and fair dealing is implied in every contract:

> The obligation to deal in good faith is now a
> well-established principle of contract law.
> Restatement (Second) Contracts § 205 (1979)
> provides that "[e]very contract imposes upon
> each party a duty of good faith and fair
> dealing in its performance and its
> enforcement." In Hawaii Leasing v. Klein, 5
> Haw. App. 450, 456, 698 P.2d 309, 313 (1985),
> the Intermediate Court of Appeals (ICA)
> explicitly recognized that parties to a
> contract have a duty of good faith and fair
> dealing in performing contractual
> obligations.

Best Place, Inc. v. Penn Am. Ins. Co., 82 Haw. 120, 124, 920 P.2d

334, 338 (1996).

However, it does not follow that a separate claim for a

breach of the covenant of good faith and fair dealing is

routinely cognizable. As this court noted in Pugal v. ASC

(America's Savings Co.), Civil No. 11-00054 SOM-KSC, 2011 WL

4435089, at *4 (D. Haw. Sept. 21, 2011), a claim that in essence

asserts the tort of "bad faith" has not been recognized in Hawaii

in the mortgage context. For the most part, "bad faith" claims

are limited to the insurance context in Hawaii. See Best Place

v. Penn Am. Ins. Co., 82 Haw. 120, 128, 920 P.2d 334, 342 (1996).

Even if Soriano could bring a claim for breach of the

covenant of good faith and fair dealing, Count VII would fail.

In the SAC, Soriano does not identify which contract

contained the implied covenant of good faith and fair dealing

that she says was breached. The court assumes that Soriano is

referring to the documents attached as Exhibits "A" and "B" to

35

the SAC.  See SAC ¶¶ 113-14, ECF No. 66.  However, as discussed
earlier in this order, Exhibits "A" and "B" are not contracts
regarding both of Soriano's mortgages.  Soriano does not point to
any contract in which Wells Fargo Defendants promised not to
foreclose on the very mortgage that they did foreclose on.
Accordingly, Soriano does not adequately plead her claim that
Wells Fargo Defendants breached the covenant of good faith and
fair dealing.  The court dismisses Count VII.

> ### G.  Soriano's Promissory Estoppel Claim is Not Cognizable.

In Count VIII, Soriano asserts a promissory estoppel
claim.  Wells Fargo Defendants argue that Count VIII should be
dismissed for vagueness.  The court does not dismiss Count VIII
on that ground, but dismisses Count VIII as barred by the statute
of frauds.

In Hawaii, "[a] promissory estoppel may arise as an
application of the general principle of equitable estoppel to
certain situations where a promise has been made, even though
without consideration, if it was intended that the promise be
relied upon and was in fact relied upon, and a refusal to enforce
it would be virtually to sanction the perpetration of fraud or
result in other injustice."  In re Herrick, 82 Haw. 329, 337, 922
P.2d 942, 950 (Haw. 1996).

The elements of a promissory estoppel claim are:

"(1) There must be a promise; (2) The promisor must, at the time he or she made the promise, foresee that the promisee would rely upon the promise (foreseeability); (3) The promisee does in fact rely upon the promisor's promise; and (4) Enforcement of the promise is necessary to avoid injustice." Id. at 337-38, 922 P.2d at 950-51.

As to the first element, Soriano alleges that Wells Fargo Defendants promised "that [they] would suspend foreclosure proceedings and not re-institute such proceedings so long as Plaintiff did what Defendants requested with respect to payments and applications, and further that they would not re-institute foreclosure proceedings without notice to Plaintiff." SAC ¶ 117, ECF No. 66. As to the second element, foreseeability, Soriano alleges in conjunction with her claim for fraud and misrepresentation (Count IV) that Wells Fargo Defendants "knew or should have known that these representations were false and misleading, and that Plaintiff would rely on these representations and failures to her detriment." Id. ¶ 96.[5] As to the third element, Soriano alleges that she "relied on those promises to her detriment and was justified in her reliance." Id. ¶ 118. See also id. ¶ 53. Finally, as to the fourth

---

[5] Although Count IV, alleging fraud and misrepresentation, is pled separately from Count VIII, the counts relate to the same underlying conduct. The court construes the foreseeability alleged in Count IV as applicable to Count VIII, as Count VIII incorporates by reference all preceding allegations.

element, although Soriano does not explicitly allege that
enforcement of the promise is necessary to avoid injustice, Count
VIII, read in the light most favorable to Soriano, implicitly
alleges that Wells Fargo Defendants committed an injustice that
only the enforcement of the promise can rectify: "WFHM and WFB
broke those promises by foreclosing on Plaintiff's property and
selling it at auction without notice to Plaintiff, and without
justification." Id. ¶ 119.

The court is concerned that Count VIII essentially
restates the breach of contract claim in Count VI. Like Count
VI, Count VIII alleges that Wells Fargo Defendants made oral
promises that are not enforceable under the statute of frauds.
For that reason, the court dismisses Count VIII.

> H.   Soriano Fails To State A Due Process Violation
>      Under HAMP.

Other than her FDCPA claim, Soriano's only other claim
arising under federal law is Count IX, which asserts a denial of
due process under the Fourteenth Amendment. Soriano argues that
Wells Fargo Defendants' participation in the Home Affordable
Modification Program ("HAMP")[6] rendered them state actors such

---

[6] HAMP is a federal program offered by the Departments of
the Treasury and Housing and Urban Development to help employed
homeowners lower their monthly mortgage payments with cooperation
from mortgage loan servicers. See Making Home Affordable,
http://www.makinghomeaffordable.gov/programs/lower-payments/Pages
/hamp.aspx (last visited Apr. 4, 2012). One district court has
described HAMP as follows:

that their actions implicated a constitutional violation.  <u>See</u>

SAC ¶ 122, ECF No. 66.  Because participation in the HAMP program

---

> On October 8, 2008, President Bush signed into law the Emergency Economic Stabilization Act of 2008, Pub. L. No. 110-343, 122 Stat. 3765 (codified 12 U.S.C. § 5201 et seq.) ("EESA").  Section 109 required the Secretary of the Treasury ("the Secretary") to take certain measures in order to encourage and facilitate loan modifications.  12 U.S.C. § 5219.  However, Section 109 did not create any private right of action against servicers for grievances relating to the EESA.  <u>Ramirez v. Litton Loan Serv.</u>, LP, 2009 WL 1750617, *1 (D. Ariz. 2009); <u>Barrey v. Ocwen Loan Serv., LLC</u>, 2009 WL 1940717, * 1 (D. Ariz. 2009).  The EESA authorized the Secretary of the Treasury, FHFA, Fannie Mae, and Freddie Mac to create the Making Home Affordable Program on February 18, 2009, which consists of two components: (1) the Home Affordable Refinance Program, and (2) the HAMP.  <u>Williams</u>, 2009 WL 3757370, *2.  The HAMP aims to financially assist three to four million homeowners who have defaulted on their mortgages or who are in imminent risk of default by reducing monthly payments to sustainable levels.
>
> The HAMP works by providing financial incentives to participating mortgage servicers to modify the terms of eligible loans.  On March 4, 2009, the Secretary issued guidelines under the HAMP requiring lenders to consider borrowers for loan modifications and suspend foreclosure activities while a given borrower was being evaluated for a modification.  U.S. Dep't of the Treasury, Home Affordable Modification Program Guidelines (Mar. 4, 2009).

<u>Marks v. Bank of Am., N.A.</u>, No. 03:10-cv-08039-PHX-JAT, 2010 WL 2572988, *5 (D. Ariz. June 22, 2010).

does not make Wells Fargo Defendants state actors, the court dismisses this claim.

Due process claims are typically brought against state officials under 42 U.S.C. § 1983, and against federal actors under <u>Bivens v. Six Unknown Named Agents</u>, 403 U.S. 388 (1971).

Although HAMP is a federal program, the analysis of constitutional violations by state actors sued under § 1983 is instructive. "A § 1983 claim requires two essential elements: (1) the conduct that harms the plaintiff must be committed under color of state law (i.e., state action), and (2) the conduct must deprive the plaintiff of a constitutional right." <u>Ketchum v. Alameda Cnty.</u>, 811 F.2d 1243, 1245 (9th Cir. 1987); <u>Caballero v. City of Concord</u>, 956 F.2d 204, 206 (9th Cir. 1992).

In determining whether a private party's actions constitute "state action" under the Fourteenth Amendment, courts must inquire into whether the party's actions may be "fairly attributable to the State." <u>Lugar v. Edmondson Oil Co.</u>, 457 U.S. 922, 937 (1982). This determination involves a two-part analysis: "First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible. . . . Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor." <u>Id.</u>  <u>See also</u> <u>Pinhas v. Summit Health, Ltd.</u>, 894 F.2d

1024, 1033 (9th Cir. 1989) (quoting <u>Lugar</u>, 457 U.S. at 937).  The

two elements of the <u>Lugar</u> test have been labeled the "state

policy" and the "state actor" requirements, respectively.

<u>Collins v. Womancare</u>, 878 F.2d 1145, 1151 (9th Cir. 1989) (citing

<u>Roudybush v. Zabel</u>, 813 F.2d 173, 176 (8th Cir. 1987)).

    With respect to whether the state actor requirement has

been met, the Supreme Court notes, "Only by sifting facts and

weighing circumstances can the nonobvious involvement of the

State in private conduct be attributed its true significance."

<u>Burton v. Wilmington Parking Authority</u>, 365 U.S. 715, 722 (1961).

The inquiry into whether private persons are jointly engaged with

state officials "focuses on whether the state has 'so far

insinuated itself into a position of interdependence with [the

private entity] that it must be recognized as a joint participant

in the challenged activity.'"  <u>Gorenc v. Salt River Project</u>

<u>Agric. Improvement & Power Dist.</u>, 869 F.2d 503, 507 (9th Cir.

1989).  Thus, joint action requires a substantial degree of

cooperative action between public officials and private persons.

<u>Collins</u>, 878 F.2d at 1154.

    Applying the § 1983 analysis to the <u>Bivens</u> context,

this court now considers whether Wells Fargo Defendants could be

construed as federal actors.  Soriano alleges that their

participation in HAMP is sufficient:

        122.  Through their
        participation in the HAMP program,

41

> WFHM and WFB invited sufficient
> state action to support Plaintiff's
> constitutional claim of failure of
> due process in the taking of her
> home without notice.
>
> 123.  Plaintiff was deprived
> of her property without due
> process; that is, without notice
> and opportunity to be heard as
> alleged above.

SAC ¶¶ 122-23, ECF No. 66.

These allegations are not sufficient to support a due
process claim.  First, Count IX is deficient on its face, as it
does not allege facts from which Wells Fargo Defendants can
discern the basis of any due process claim.  While the SAC
alleges that Soriano and Wells Fargo Defendants were discussing a
possible loan modification, the SAC does not state that any loan
modification would be pursuant to any governmental program.

Second, even assuming Wells Fargo Defendants did
participate in HAMP, any such participation would not render them
federal actors.  There is no allegation from which one could
conclude that the federal government had "so far insinuated
itself into a position of interdependence" with Wells Fargo
Defendants that the latter could be said to have been government
actors.  See Gorenc, 869 F.2d at 507.  Not only does Soriano
provide no authority for her contention that participants in HAMP
are governmental actors, this is not a position that has been
accepted by courts in this circuit.  See Neal v. E-Trade Bank,

42

Civ. No. S-11-0954 FCD/GGH, 2011 WL 3813158, at *4 (E.D. Cal. Aug. 26, 2011) (regarding HAMP, "Plaintiffs' procedural due process claim falls short of permitting the court to infer a plausible connection among the private defendants and a government agency or official such that the private actions would constitute state action. The mere existence of a regulatory scheme which these private defendants must comply with cannot convert them into state actors. Such an analysis is inimical to the Due Process Clause.").

In her Opposition to the WF Motion, Soriano does not challenge any of the points or authorities presented by Wells Fargo Defendants. She says only that she "is not aware of any appellate decision on this issue and believes that the cases cited by Defendants are incorrect and do not reflect the remedial purposes of HAMP. Thus, Plaintiff asks this Court to depart from the cases cited." Opp'n to WF Motion at 15, ECF No. 87. The court sees no reason on the present record to do as Soriano requests. The court dismisses Count IX.

V.        THE SAMP MOTION.

The SAMP Motion asks the court to dismiss the sole claim against SAMP (Count X). SAMP essentially argues that, because the Transfer Certificate of Title ("TCT") issued to it by Hawaii's Land Court conclusively and unimpeachably confers

43

ownership of the subject property on SAMP, Soriano cannot challenge SAMP's ownership of the subject property.

In its motion, SAMP argues that section 501-82 of the Hawaii Revised Statutes provides that TCTs evidence conclusive title to land that cannot be challenged once issued. SAMP says that the Hawaii Supreme Court has ruled that "a mortgagor's right to challenge . . . any foreclosure proceeding is expressly limited to the period before entry of a new certificate of title." See Aames Funding Corp. v. Mores, 107 Haw. 95, 101, 110 P.3d 1042, 1048 (2005). SAMP says that, as Soriano does not allege that SAMP is liable for fraud, the TCT is conclusive and unimpeachable. SAMP Motion at 6-7, ECF No. 67 (citing In re Bishop Trust Co., 35 Haw. 816, 825 (Haw. Terr. 1941)).

In opposition, Soriano argues that, because the underlying foreclosure was the result of an unfair or deceptive act or practice, the foreclosure sale to SAMP was invalid. Soriano contends that Wells Fargo Defendants could not pass good title based on a void transaction, even if SAMP was a bona fide purchaser. See Opp'n to SAMP Motion at 1-5, ECF No. 88. Soriano also argues that SAMP is a necessary party that cannot be dismissed from the case, that SAMP was not an innocent purchaser, and that she did not have notice of the sale. Id. at 6-7. SAMP contests the relevance of Soriano's arguments to the legitimacy of a TCT.

44

In the present order, the court is dismissing Soriano's UDAP claim. Therefore, to the extent Soriano seeks to undo the sale to SAMP, she is limited to other grounds. One ground advanced by Soriano is her lack of knowledge that a foreclosure sale would occur. Soriano says that she had no opportunity to challenge the transfer of title to SAMP before the TCT issued because she was unaware any transfer would occur.

Assuming Soriano proves that, under the circumstances, she neither knew nor should have known that Wells Fargo Defendants were foreclosing on her property, this court's view is that it is best for the state courts to address the question of whether the Hawaii Supreme Court would treat Soriano as having a valid basis for challenging SAMP's TCT even after its entry. Moreover, the court notes that the issue of Soriano's challenge to SAMP's TCT need only be addressed if Soriano prevails on a claim that gives rise to a right to unwind the sale of her property (as opposed to supporting only an award of money damages).[7] For that reason, the court sees no need to rule on the viability of a challenge to the TCT until that occurs. At this time, it is unnecessary for this court to wade into this area of state law. Instead of addressing the TCT issue, the court terminates the SAMP Motion as premature and bifurcates the

---

[7] Whether any of Soriano's remaining claims provides rescission as a remedy was not a matter briefed by the parties. The court therefore does not address that issue here.

trial such that Soriano's claims against Wells Fargo Defendants will be tried first, and her claims against SAMP, to the extent triable factual issues are implicated, will follow. SAMP need not participate in the first phase, scheduled to begin on June 27, 2012.

The termination of the SAMP Motion is without prejudice to its possible reactivation, if necessary, at a future date.

VI.      <u>CONCLUSION.</u>

The court GRANTS the WF Motion as to Counts II (UDAP), III (fiduciary duty), a portion of Count IV (fraud), VIII (promissory estoppel), and IX (due process), but DENIES the WF Motion as to Count I (FDCPA), the remaining portion of Count IV (negligent misrepresentation), and Count V (negligence).

Because the FDCPA remains in issue, this court continues to have federal question jurisdiction. The court therefore DENIES the request made by SAMP in its Joinder.

At the present time, the court DENIES and terminates the SAMP Motion, without prejudice to reactivating it. The court bifurcates the trial in the manner set forth above. The court will consider the issues raised in the SAMP Motion at a later date, if necessary.

The parties are encouraged to discuss with each other how best to proceed. It occurs to the court that Soriano may want to seek leave to amend her claims even though the cutoff for

amending pleadings has passed, and that Wells Fargo Defendants may want to seek leave to file a summary judgment motion even though the motions cutoff has passed. Possibly, the parties will be able to agree on these procedural matters. Any agreement must, of course, include SAMP. A stipulation may be submitted for approval to the Magistrate Judge, who may assign a new trial date. In the absence of an agreement, any desired leave must be sought by motion, and this court indicates no inclination here as to whether any such motion should be granted or denied.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, April 30, 2012.



/s/ Susan Oki Mollway
Susan Oki Mollway
Chief United States District Judge

Rosa E. Soriano v. Wells Fargo Bank, N.A. et al., Civ. No. 11-00044 SOM/KSC; ORDER (1) GRANTING IN PART AND DENYING IN PART DEFENDANTS WELLS FARGO BANK, N.A., WELLS FARGO HOME MORTGAGE, INC., AND WELLS FARGO HOME MORTGAGE OF HAWAII, LLC'S MOTION TO DISMISS SECOND AMENDED COMPLAINT; (2) DENYING DEFENDANT SAMP, LLC'S SUBSTANTIVE JOINDER IN DEFENDANTS WELLS FARGO BANK, N.A., WELLS FARGO HOME MORTGAGE, INC., AND WELLS FARGO HOME MORTGAGE OF HAWAII, LLC'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT; AND (3) DENYING DEFENDANT SAMP, LLC'S MOTION TO DISMISS SECOND AMENDED COMPLAINT