IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| ROSA E. SORIANO, | ) | CIVIL. NO. 11-00044 SOM/KSC |
| | ) | |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING IN PART AND |
| | ) | DENYING IN PART DEFENDANTS' |
| vs. | ) | MOTION FOR SUMMARY JUDGMENT |
| | ) | |
| WELLS FARGO BANK, N.A., et | ) | |
| al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| _____ | ) | |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

**I.        INTRODUCTION.**

Plaintiff Rosa E. Soriano is suing Defendants Wells

Fargo Bank and Wells Fargo Home Mortgage (collectively, "Wells

Fargo Defendants")[1] in connection with an allegedly wrongful

foreclosure relating to property that she owned.  Soriano alleges

that, although she complied with Wells Fargo Defendants'

---

[1] Wells Fargo Home Mortgage of Hawaii, LLC, is also named in this
action.  Because Soriano's Third Amended Complaint did not allege
any claims against Wells Fargo Home Mortgage of Hawaii, Wells
Fargo Defendants requested, and Soriano agreed, that Wells Fargo
Home Mortgage of Hawaii be deleted as a party to this action.
See Motion at 7; Opp'n at 2.  Upon reviewing the four corners of
the Third Amended Complaint, the court dismisses Wells Fargo Home
Mortgage of Hawaii, LLC, from this action.

instructions on curing her indebtedness to avoid foreclosure, they nonetheless sold her property.

Wells Fargo Defendants now move for summary judgment on the Third Amended Complaint.  ECF No. 114.  The court grants the motion in part and denies it in part.

II.      **BACKGROUND.**

On November 17, 2003, to purchase real property in Ewa Beach, Soriano obtained mortgage loan No. 0036509545 from Wells Fargo Home Mortgage of Hawaii in the amount of $251,192 (the "First Mortgage").  Mortgage Note, ECF No. 115-3; Recordation Notice, ECF No. 115-4.  Wells Fargo Home Mortgage, Inc., was assigned the First Mortgage that same day, and Wells Fargo Bank subsequently acquired an interest in the First Mortgage through its merger with Wells Fargo Home Mortgage, Inc.[2]  Hawaii Assignment of Mortgage Notice, ECF No. 115-5.

Also on November 17, 2003, Soriano took out a 10-year home equity line of credit (No. 65065015002791998) with Wells Fargo Bank with a maximum credit limit of $47,098 (the "Second Mortgage").  ECF No. 115-6.  That same day, Soriano withdrew the maximum amount of her Second Mortgage.  By January 18, 2005, she

---

[2] As of May 8, 2004, Wells Fargo Home Mortgage, Inc., ceased to be a separate corporation and became a wholly owned division of Wells Fargo Bank.  See Decl. of Denise Brennan  ¶¶ 3,8.

had repaid the principal and the interest owed on the Second

Mortgage in full.  Wells Fargo Account Statement, ECF No. 115-9.

Soriano says that she then "orally requested that the loan be

closed, that there be no more advances under the loan, and that

the second mortgage be canceled."  Soriano Decl. ¶ 8, ECF No.

119-1.  Soriano further says that Wells Fargo agreed to her

request.  Id. ¶ 9.

Claiming that the Second Mortgage was "never

reactivated" and that she "never requested additional advances

under that equity line," id. ¶ 12, Soriano says, "In 2008, Wells

Fargo made an unsolicited call to Plaintiff and offered her a

home equity credit line over the telephone."  Id.  ¶ 16.  Soriano

says she "understood and believed that this was a new loan with a

new second mortgage, unrelated to her prior loans."  Id. ¶ 21.

According to Soriano, she "never received copies of any documents

or disclosures regarding this transaction," but she did receive

$45,000 from this loan that Wells Fargo wired to her account.

Id. ¶¶ 17, 19.

According to Wells Fargo Defendants' records, the

$45,000 sum was borrowed against her 2003 Second Mortgage.  See

Wells Fargo Account Statement, ECF No. 115-9.  Wells Fargo

Defendants' records also indicate that Soriano took out an

additional $2,000 against her Second Mortgage on November 13, 2008.  Wells Fargo Account Statement, ECF No. 115-9.

Soriano defaulted on her First Mortgage in 2009.  <u>See</u> March 9, 2010 Letter, ECF No. 66-2.  She says she then "spoke with numerous and different employees" of Wells Fargo "at least 25 times during 2009 and 2010 in an effort to modify her loans." Soriano Decl. ¶ 28.  Soriano says, "On these many telephone conversations, Plaintiff was continuously told and understood that [Wells Fargo Home Mortgage] was a separate legal entity, though she was not clear as to which loan it was collecting." <u>Id.</u> ¶ 29.

On March 9, 2010, Wells Fargo Home Mortgage sent Soriano a letter regarding a possible loan modification and/or reinstatement.  <u>See</u> ECF No. 66-1.  The letter, which referred to the loan number for the First Mortgage, noted, "This program, known as a loan modification, will reschedule your loan balance to set up a new payment and provide you with an opportunity for a fresh start."  <u>Id.</u>

On June 18, 2010, Wells Fargo Defendants sent Soriano a letter stipulating to a partial loan reinstatement/ repayment for her First Mortgage.  <u>See</u> ECF No. 66-2.  The letter, which again

noted the loan number for the First Mortgage, said, "We have agreed to accept a partial reinstatement in the amount of $21,577.49, to be submitted in the form of certified funds or a cashier's check, to be received on or before 101710." Id.  The letter also provided:

> We will not instruct our foreclosure counsel to suspend foreclosure proceedings until this signed agreement and funds for partial reinstatement have been received by the aforementioned date.  Fees and costs will be paid first, with the remainder being credited to accrued payments.  If you make all the remaining required payments as outlined below resulting in a full reinstatement, we will instruct our foreclosure counsel to dismiss foreclosure proceedings and report to credit bureaus accordingly.  If you default on the repayment plan outlined below, any other terms of this agreement, any additional terms of your Note or Mortgage not addressed here, we will resume the foreclosure action immediately.

Id.  Soriano signed the letter on June 22, 2010.

Meanwhile, Soriano also defaulted on the Second Mortgage.  See Transaction Statement, ECF No. 115-9.  On October 4, 2010 (before the deadline of October 17, 2010, set by Wells Fargo Defendants for Soriano's fourth and final payment under the "Forbearance plan" outlined in the letter of June 18, 2010),

Wells Fargo foreclosed on the Second Mortgage by a public auction
sale.  <u>See</u> Mortgagee's Affidavit of Foreclosure, ECF No. 115-11.

Soriano appears to have been confused about the status
of her mortgages with Wells Fargo Defendants over the next
several months.  She says that she made all four required
payments under the letter agreement of June 18, 2010.  Soriano
Decl. ¶ 42.  Wells Fargo Defendants' records, however, do not
reflect receipt of the fourth payment by the deadline of October
17, 2010.  <u>See</u> Customer Account Activity Statement, ECF No. 115-
8.  According to Soriano, Wells Fargo Defendants' representative
"demanded" that she make the fourth payment ($21,577.49) "on or
about October 9, 2010," notwithstanding the previously announced
deadline of October 19, 2010.  Soriano Decl. ¶ 44.  She says she
"complied with that demand" by giving Wells Fargo Defendants
authorization over the telephone to take the money from her
account.  Wells Fargo Defendants allegedly gave her a
confirmation number "to confirm that payment."  <u>Id.</u> ¶ 45.
According to Soriano, upon later learning that Wells Fargo
Defendants had not taken the $21,577.49 from her account, she
inquired about what had occurred, and Wells Fargo Defendants told
her "that because of a new program that she could qualify for,

they would need less money and they would tell her the exact amount later, but that she need not worry since there would be no foreclosure on her property." Id. ¶¶ 46, 47.

Soriano also says that in December 2010 Wells Fargo Bank "continued to represent to Plaintiff that they were putting her on that new program and asked for payment of $5788.00." Id. ¶ 60.  In January 2011, Soriano allegedly spoke with Wells Fargo Bank's attorneys, "who said her loan was being reinstated so the foreclosure sale was cancelled." Id. ¶ 66.  "On or about January 10, 2011, Plaintiff called Wells Fargo directly and Wells Fargo confirmed what their attorney had said; that is, that her loan had been reinstated so there was no foreclosure sale." Id. ¶ 67. That same day, Soriano allegedly spoke with Wells Fargo Bank's attorney "and was then told that the loan had been paid in full, but that they did not know who paid it." Id. ¶ 68.  On January 11, 2011, Soriano allegedly spoke with both Wells Fargo Bank and its attorneys, "and both said that the loan was paid off, that the amount paid was $244,204.00, but neither knew who had paid it off." Id. ¶ 69.  One week later, Soriano received a letter dated January 8, 2010, stating that the First Mortgage had been paid in

full.  Id. ¶ 70; see also Confirmation of Loan Payoff Letter, ECF No. 119-8.

On January 1, 2011, Soriano brought suit against Wells Fargo Defendants as well as SAMP, LLC, the entity that had purchased the property in foreclosure.  See Compl., ECF No. 1. Wells Fargo Defendants and SAMP filed separate motions to dismiss, and SAMP also substantively joined in Wells Fargo Defendants' motion.  See ECF Nos. 67, 70, 71.  This court granted Wells Fargo Defendants' motion in part and denied and terminated SAMP's motion in its entirety.  ECF No. 95.

Soriano then filed a Third Amended Complaint asserting the following claims: (1) violation of the federal Fair Debt Collection Practices Act ("FDCPA"); (2) violation of Hawaii's Unfair and Deceptive Acts or Practices ("UDAP") law; (3) negligent misrepresentation; (4) negligence; (5) breach of contract; and (6) promissory estoppel.  Third Am. Compl., ECF No. 102.  Wells Fargo Defendants now move for summary judgment on these claims.  The court grants the motion in part and denies it in part.

III.        STANDARD OF REVIEW.

Summary judgment shall be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  One of the principal purposes of summary judgment is to identify and dispose of factually unsupported claims and defenses.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  Accordingly, "[o]nly admissible evidence may be considered in deciding a motion for summary judgment." Miller v. Glenn Miller Prods., Inc., 454 F.3d 975, 988 (9th Cir. 2006).  Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial.  See Celotex, 477 U.S. at 323.  A moving party has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000).  The burden initially falls on the moving party to identify for the court "those portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." T.W. Elec. Serv., Inc. v. Pac. Elec.

Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing

Celotex Corp., 477 U.S. at 323); accord Miller, 454 F.3d at 987.

"A fact is material if it could affect the outcome of the suit

under the governing substantive law." Miller, 454 F.3d at 987.

When the moving party fails to carry its initial burden

of production, "the nonmoving party has no obligation to produce

anything." In such a case, the nonmoving party may defeat the

motion for summary judgment without producing anything. Nissan

Fire, 210 F.3d at 1102-03. On the other hand, when the moving

party meets its initial burden on a summary judgment motion, the

"burden then shifts to the nonmoving party to establish, beyond

the pleadings, that there is a genuine issue for trial." Miller,

454 F.3d at 987. This means that the nonmoving party "must do

more than simply show that there is some metaphysical doubt as to

the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio

Corp., 475 U.S. 574, 586 (1986) (footnote omitted). The

nonmoving party may not rely on the mere allegations in the

pleadings and instead "must set forth specific facts showing that

there is a genuine issue for trial." Porter v. Cal. Dep't of

Corr., 419 F.3d 885, 891 (9th Cir. 2005) (quoting Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)). "A genuine

dispute arises if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." California v. Campbell, 319 F.3d 1161, 1166 (9th Cir. 2003); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000) ("There must be enough doubt for a 'reasonable trier of fact' to find for plaintiffs in order to defeat the summary judgment motion.").

On a summary judgment motion, "the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor." Miller, 454 F.3d at 988 (quotations and brackets omitted).

IV.     ANALYSIS.

    A.   Count I: The Fair Debt Collection Practices Act.

Soriano first alleges that Wells Fargo Bank is a debt collector "and within the year prior to filing this Complaint, [had] been attempting to collect an alleged debt from Plaintiff." Third Am. Compl. ¶ 80.  She says that Wells Fargo Bank "has been using a fictitious entity, that is, Wells Fargo Home Mortgage, Inc.[,] in its attempt to collect debts from Plaintiff, and thus, [Wells Fargo Bank] is debt collector."  Opp'n at 7.

The Fair Debt Collection Practices Act ("FDCPA") prohibits abusive debt collection practices.  See 15 U.S.C.

§ 1692(a).  In relevant part, the FDCPA prohibits a creditor who, "in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts."  15 U.S.C. § 1692a(6).

Soriano does not dispute that Wells Fargo Home Mortgage merged into Wells Fargo Bank and has been a wholly owned division of Wells Fargo Bank's since May 8, 2004.  See Brennan Decl. ¶ 3. To the extent Soriano is asserting an FDCPA claim with respect to her First Mortgage, her claim fails because Wells Fargo Bank, as the successor entity that acquired the First Mortgage before Soriano defaulted, is not a "debt collector" within the ambit of the FDCPA.  See 15 U.S.C. § 1692a(6)(B); see also Fox v. Citicorp Credit Services, Inc., 15 F.3d 1507, 1514 (9th Cir. 1994) ("the term 'debt collector' does not include those collecting debts for corporate affiliates if the person acting as a debt collector does so only for persons to whom it is so related or affiliated and if the principal business of such person is not the collection of debts") (internal quotations omitted).  Wells Fargo appears to have been collecting its own debt.  No party asserts that a bank's principal business is the collection of debts.  See

15 U.S.C. § 1692a(6)(F)(ii) (excluding from the ambit of the FDCPA "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was originated by such person").

Soriano's FDCPA claim also fails with respect to her Second Mortgage.  Because Wells Fargo Bank was the original lender on the Second Mortgage, it does not qualify as a debt collector under the FDCPA.  <u>See</u> 15 U.S.C. § 1692a(6)(F)(ii).

The court is unpersuaded that Wells Fargo Defendants, "in the process of collecting [their] own debts, use[d] any name other than [their] own which would indicate that a third person is collecting or attempting to collect such debts."  15 U.S.C. § 1692(a)(6).  As the court said in its Order Granting in Part and Denying in Part Wells Fargo Defendants' Motion to Dismiss, the references in correspondence from Wells Fargo Defendants to "Wells Fargo," "Wells Fargo Bank, N.A.", and "Wells Fargo Home Mortgage" are not "indication[s] that a third party was collecting any debt."  ECF No. 95 at 22-23.  There is no evidence in the record that Wells Fargo Home Mortgage is a fictitious entity serving as a third-party debt collector for Wells Fargo

Bank.  The record indicates that "Wells Fargo Home Mortgage" was a Wells Fargo Bank "division" at the time of the events in issue. It cannot be that using a name of a division constitutes an indicator that a third person is collecting an entity's debt. That would be akin to referring to a bank's local branch which, if not a separate legal entity, would not be a third person. Soriano's FDCPA claim fails.

### B.   Count II: Unfair and Deceptive Acts and Practices.

Count II alleges that Wells Fargo Defendants violated chapter 480 of the Hawaii Revised Statutes, also known as Hawaii's Unfair and Deceptive Acts and Practices ("UDAP") law. Soriano's UDAP claim appears to be two-fold.  First, Soriano alleges that "Wells Fargo indicated to Plaintiff, and Plaintiff understood, that the 2008 loan [for $45,000] was a new loan and second mortgage, not a cash advance pursuant to the 2003 second mortgage that was supposed to have been satisfied in full and cancelled."  Third Am. Compl. ¶ 88.  Second, Soriano alleges that Wells Fargo Defendants' letters of March 9, 2010, and June 18, 2010, "did not state that only the first mortgage would not be foreclosed upon and that Wells Fargo would foreclose upon the second mortgage, but rather said that there would be no

foreclosure, period, thus creating the prohibited likelihood of confusion resulting in severe damage to Plaintiff." <u>Id.</u> ¶ 89.[3]

"Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful." Haw. Rev. Stat. § 480-2. To prevail on a UDAP claim, a plaintiff must establish: "(1) a violation of chapter 480; (2) which causes an injury to the plaintiff's business or property; and (3) proof of the amount of damages." <u>Davis v. Four Seasons Hotel Ltd.</u>, 122 Haw. 423, 435, 228 P.3d 303,315 (2010)(internal citations and alterations omitted). Chapter 480 can be violated by an action or representation that is "deceptive." A deceptive act is defined as "an act causing, as a natural and probable result, a person to do that which he would not otherwise do." <u>Eastern Star, Inc. v. Union Bldg. Materials Corp.</u>, 6 Haw. App. 125, 712 P.2d 1148 (Haw. App. 1985).

A plaintiff establishes that there was "deception" under chapter 480 by demonstrating that there was: (1) a representation, omission, or practice that (2) was likely to mislead consumers acting reasonably under the circumstances when (3) the representation, omission, or practice was material.

---

[3] There are two consecutive paragraphs numbered 89 in the Third Amended Complaint. The court's citation refers to the second of the two paragraphs.

<u>Tokuhisa v. Cutter Mgmt. Co.</u>, 122 Haw. 181, 195, 223 P.3d 246, 260 (2009).  A representation, omission, or practice is "material" if it involves information that is important to consumers and is likely to affect their conduct regarding a product.  <u>Id.</u>  Whether an act or practice is deceptive is judged by an objective "reasonable person" standard.  <u>Yokoyama v. Midland Nat'l Life Ins. Co.</u>, 594 F.3d 1087, 1092 (9th Cir. 2010) ("Hawaii's consumer protection laws look to a reasonable consumer, not the particular consumer.").

The first portion of Soriano's UDAP claim, which concerns her belief that the $45,000 cash advance she received in 2008 was in connection with a new second mortgage, is not cognizable under Hawaii law.  Even assuming that Wells Fargo Defendants misrepresented the status of Soriano's Second Mortgage, there is no evidence that Soriano's confusion in this regard had any material impact on any of her conduct relevant to this case or caused her any harm.  Soriano was admittedly aware at all relevant times that she had two mortgages with Wells Fargo Defendants.  <u>See</u> Soriano Decl. ¶¶ 35-37 (describing Soriano's awareness of "both" mortgages).  She offers no evidence that her confusion regarding the source of her second line of credit contributed to her default on either mortgage.  The court

therefore grants Wells Fargo Defendants summary judgment on this portion of Soriano's UDAP claim.

Soriano also alleges that she relied on Wells Fargo Defendants' written and oral representations that "there would be no foreclosure, period." Third Am. Compl. ¶¶ 89, 90. With respect to written representations, Soriano points to Wells Fargo Defendants' letters dated March 9, 2010, and June 18, 2010. See ECF Nos. 66-1 and 66-2. With regard to alleged oral representations, Soriano says that she "spoke with numerous and different employees of [Wells Fargo Defendants] at least 25 times during 2009 and 2010 in an effort to modify her loans, and [Wells Fargo Defendants] continuously indicated that the loans would be modified, and that no foreclosure would occur so long as she followed their instructions, which she did." Soriano Decl. ¶ 28.

At the hearing on this motion, Wells Fargo Defendants emphasized that the letters dated March 9, 2010 and June 18, 2010, both specifically concerned only the First Mortgage. Wells Fargo Defendants pointed out that the number of the First Mortgage was expressly noted at the top of each letter. In addition, Wells Fargo Defendants observed that the language of each letter used the singular rather than plural form of the words "loan" and "mortgage."

Nevertheless, both letters contain broadly worded language susceptible to being interpreted as applicable to both mortgages.  For example, Wells Fargo Defendants said, in the letter of March 9, 2010, that Soriano's loan modification would provide her "with the opportunity for a fresh start."  ECF No. 101-1.  Even if that letter is disregarded as not embodying an agreement not to foreclose, the letter of June 18, 2010, provides, "If you make all the remaining required payments as outlined below resulting in a full reinstatement, we will instruct our foreclosure counsel to dismiss foreclosure proceedings and report to credit bureaus accordingly."  ECF No. 102-2.  Neither of these letters included any express caveat that any agreement was inapplicable to the Second Mortgage.  Thus, for example, the letter of March 9, 2010, did not state that Soriano would have a "fresh start" with respect to only her First Mortgage.  Nor did the letter of June 18, 2010, specify that foreclosure counsel would only dismiss foreclosure proceedings with respect to the First Mortgage.  A reasonable borrower would assume that a lender offering loan terms would have checked on other encumbrances (especially its own) on the property in issue. If Wells Fargo Defendants were totally ignoring their own Second Mortgage and expected Soriano to discern that because the only

loan number in the letters was for the First Mortgage, they were expecting Soriano to assume that they were not behaving like reasonable lenders!

The scope of Wells Fargo Defendants' letters may have been rendered even cloudier by the numerous conversations Soriano says she had with Wells Fargo about both her mortgages during the same time period.  Soriano says that Wells Fargo "never told Plaintiff nor indicated to Plaintiff in any way, that it was just discussing the first mortgage, but rather, Plaintiff spoke to [Wells Fargo Bank], the only legal entity involved, regarding both mortgages and she was promised that there would be no foreclosure, period."  Id. ¶ 48 (emphasis added).  Although the court agrees with Wells Fargo that the portions of this claim based on oral statements are barred by the Statute of Frauds, the oral statements, even if not actionable on their own, may be admissible as evidence relating to any ambiguous written statements.

In any event, a borrower's reasonable expectation that a lender would be aware of its own encumbrances on the property securing the loan would come into play.  The court concludes that there is a question of fact as to whether Wells Fargo Defendants'

alleged representations as to the cancelling of any foreclosure was a UDAP violation.

### C.   Count III: Negligent Misrepresentation.

Count III alleges that Wells Fargo Defendants "made numerous false representations" during 2010.   Third Am. Compl. ¶ 95.   Wells Fargo Defendants first complain that this count is not adequately pled because "Plaintiff fails to specify the grounds for her claim."   Motion at 17.   In addition, Wells Fargo Defendants argue that, "in the absence of any specific evidence of any false representation, Plaintiff's claim for negligent misrepresentation fails as a matter of law."   Id.

To prevail on a negligent misrepresentation claim under Hawaii law, a plaintiff must demonstrate that "(1) false information be supplied as a result of the failure to exercise reasonable care or competence in communicating the information; (2) the person for whose benefit the information is supplied suffered the loss; and (3) the recipient relies upon the misrepresentation."   Blair v. Ing, 95 Haw. 247, 269, 21 P.3d 452, 474 (2001).

Wells Fargo Defendants are correct in noting that this court has often been critical of "puzzle" or "shotgun" pleadings. Typically, however, this court has been critical because the

pleading does not provide a defendant with notice of what wrongdoing is being alleged.  That is not the case with Soriano's negligent misrepresentation claim, which, in any event, is not subject to the particularity requirement set forth in Rule 9(b) of the Federal Rules of Civil Procedure.  See Peace Software, Inc. v. Hawaiian Elec. Co., Inc., 2009 WL 3923350, at *6 (D. Haw. Nov. 17, 2009).

Wells Fargo Defendants' sole complaint about Soriano's pleading is that "it is impossible to determine [whether] the subject of the alleged representations or whether such representations were oral or in writing."  Motion at 17.  As to the subject, it seems clear that the subject of the alleged representations is the status of Soriano's mortgages.  As to Wells Fargo Defendants' concern that they could not discern whether Soranio was complaining about oral or written representations, Soriano's references to "numerous" representations appears to include, at the very least, Wells Fargo Defendants' letters dated March 9, 2010, and June 18, 2010. Even alone, those letters could have been misleading, and, as this court notes above, may have been particularly confusing in the context of the oral communications Soriano says she had. Accordingly, the court is not persuaded that Soriano's

allegations fail to provide Wells Fargo Defendants with adequate notice of her claim.

Nor does the court agree with Wells Fargo Defendants that Soriano fails to offer specific evidence of any false representation.  Soriano alleges that Wells Fargo "never told Plaintiff nor indicated to Plaintiff in any way, that it was just discussing the first mortgage, but rather, Plaintiff spoke to [Wells Fargo Bank], the only legal entity involved, regarding both mortgages and she was promised that there would be no foreclosure, period."  Soriano Decl. ¶ 48 (emphasis added).  The letter of June 18, 2010, speaks of a loan modification and dismissal of foreclosure proceedings, and follows on the heels of the earlier written reference to a "fresh start."  Viewing the evidence in the light most favorable to Soriano, the court concludes that Soriano shows that there is a triable negligent misrepresentation claim.  To the extent Soriano's claim is based on Wells Fargo Defendants' written representations to Soriano, the court allows the claim to proceed.  To the extent Soriano's claim is based on Wells Fargo Defendants' oral representations to Soriano, however, the court agrees with Wells Fargo Defendants that any such oral representations are precluded by the Statute of Frauds (although evidence of the oral statements, even if not

actionable on their own, may be admissible as evidence relating to any ambiguous written statements).

The court therefore grants Wells Fargo Defendants summary judgment as to any portion of Count III based solely on oral statements, but denies Wells Fargo Defendants summary judgment with regard to the remainder of Soriano's claim.

### D.    Count IV: Negligence.

Count IV asserts a claim for negligence premised on Wells Fargo Defendants' violation of their "duty not to make false representations" and their "duty under the HAMP [Home Affordable Modification Program] guidelines not to proceed with a foreclosure sale while evaluating Plaintiff for a loan modification."  Third Am. Compl. ¶¶ 101, 104.  Wells Fargo Defendants argue, "To the extent that Plaintiff's negligence claim is based on an alleged duty not to make false representations, it is duplicative of Plaintiff's claim for negligent misrepresentations and fails for the same reasons outlined above."  Motion at 18.  Wells Fargo Defendants also say that, "to the extent that the negligence claim is based on an alleged 'duty' arising from the HAMP guidelines, the claim fails as a matter of law."  Id.

To prevail on a simple negligence claim, Soriano must prove: (1) a duty, or obligation, recognized by the law, requiring a defendant to conform to a certain standard of conduct; (2) a failure on the defendant's part to conform to a certain standard of conduct; (3) a reasonably close causal connection between the conduct and the resulting injury; and (4) actual loss or damage.  Takayama v. Kaiser Found. Hosp., 82 Haw. 486, 488-89, 923 P.2d 903, 915-16 (1996).

Although, in many respects, Wells Fargo Defendants are correct in viewing the negligence claim as duplicative of the negligent misrepresentation claim, the negligence claim in Count IV does, as Wells Fargo Defendants note, include a specific reference to the HAMP Guidelines not included in the express allegations under the Count III heading.  In paragraph 104 of the Third Amended Complaint, Soriano alleges that Wells Fargo Defendants "also had a duty under the HAMP guidelines not to proceed with a foreclosure sale while evaluating Plaintiff for a loan modification."

This court is not persuaded that there is a private right of action for a violation of HAMP Guidelines.  "Lenders generally owe no duty of care sounding in negligence to their borrowers."  Northern Trust, NA v. Wolfe, 2012 WL 1983339, at *20

24

(D. Haw. May 31, 2012) (internal citations omitted).  In <u>Wolfe</u>,
Judge Leslie Kobayashi of this district court determined that a
bank's representations about working out a new loan, along with
its statements that it did not intend to foreclose, were within
the scope of the bank's "conventional role as a money lender."
<u>Id.</u>  Judge Kobayashi nevertheless noted that, while there is no
private right of action under HAMP, evidence of HAMP violations
might be evidence of negligence.  <u>Id.</u> at 21.  She dismissed the
negligence claim because it was insufficiently pled, without
prejudice, stating that it was "arguably possible" that the
pleading defects could be cured.  <u>Id.</u>

Among other things, the HAMP guidelines provide that,
"[t]o ensure that a borrower currently at risk of foreclosure has
the opportunity to apply for HAMP, servicers should not proceed
with a foreclosure sale until the borrower has been evaluated for
the program and, if eligible, an offer to participate in HAMP has
been made."  U.S. Dep't of the Treasury, Home Affordable
Modification Program Guidelines, § VII, 610.04.04.  This court
permits Count IV to proceed to the extent an alleged breach of
the HAMP Guidelines is offered as evidence of common law
negligence, not to the extent a claim directly under the HAMP
Guidelines is asserted.  This is the approach taken in <u>Speleos v.</u>

25

<u>BAC Home Loans Servicing, LP.</u>, 755 F. Supp. 2d 304, 310-11 (D. Mass. 2010).

As with Count III, the court grants Wells Fargo Defendants summary judgment with respect to any portion of Count IV that relies solely on oral statements.  The court denies Wells Fargo Defendants summary judgment with respect to the remainder of Count IV.

### E.   Count V: Breach of Contract.

Count V asserts a claim for breach of contract based on the letters of March 9, 2010, and June 18, 2010.  Soriano alleges that these letters constitute a written contract "such that those Defendants would suspend any attempts to foreclose upon Plaintiff's property (not just the first mortgage) so long as Plaintiff complied with their demands therein, which she did." Third Am. Compl. ¶ 108.  Soriano also complains that, although the letter of March 9, 2010, said that her initial loan payment would be returned if she was not approved for a loan workout, "no such payment was ever returned to Plaintiff." <u>Id.</u> ¶ 109.  Wells Fargo argues that Soriano's claim is "essentially the same claim that was dismissed by this Court in its April 30, 2012 Order for failure to state a claim." Motion at 19.  Wells Fargo Defendants also argue that any argument by Soriano that they breached the

terms of the letter of March 9, 2010, is "entirely unfounded." Id. at 21.

In its Order of April 30, 2012, the court dismissed Soriano's allegations that "Wells Fargo Defendants breached an oral contract not to foreclose on her property without first notifying her." ECF No. 95 at 32. Soriano's Third Amended Complaint, however, takes a different tack. Soriano argues that the letters of March 9, 2010 and the June 18, 2010 letters constituted a binding agreement "such that [Wells Fargo Defendants] would suspend any attempts to foreclose upon Plaintiff's property (not just the first mortgage) so long as Plaintiff complied with their demands therein, which she did." Third Am. Compl. ¶ 108. Thus, Soriano is no longer relying on the letters as evidence of an oral contract; rather, she is now asserting that the letters represent a written contract in and of themselves.

This revised breach of contract claim suffers from some of the same infirmities that resulted in the dismissal of the earlier breach of contract claim. In its Order of April 30, 2012, the court described the letter of March 9, 2010, as "not an agreement to refrain from foreclosing." ECF No. 95 at 33. The court explained that the letter only "provides preliminary

requirements and contemplates that an agreement will be sent to Soriano later if a loan modification is ultimately approved." Id. The letter "further says that any foreclosure action will not be placed on hold 'until you have returned the signed agreement and the required initial payment.'" Id. As the court noted in its earlier Order, Soriano appeared to be asserting that the letter of June 18, 2010 was the agreement referred to in the letter of March 9, 2010. Id.

However, in one respect relevant to the letter of March 9, 2010, Soriano does appear to assert in the Third Amended Complaint a claim as to which there are triable factual issues. Soriano asserts that Wells Fargo Defendants breached an agreement by failing to return her initial payment. In the letter of March 9, 2010, Wells Fargo Defendants said, "If you are not approved for a loan workout, the initial payment will be returned to you." ECF No. 66-1. In the letter of June 18, 2010, Wells Fargo Defendants told Soriano that she had been approved for a loan workout. See ECF No. 66-2. Wells Fargo then proceeded to foreclose on Soriano's property nearly two weeks before it was even possible for Soriano to satisfy the remaining terms of that June letter. Compare ECF No. 66-2 (scheduling Soriano's final payment under the loan modification plan for October 17, 2010)

with Mortgagee's Affidavit of Foreclosure, ECF No. 115-11 (indicating that Wells Fargo foreclosed on Soriano's property on October 4, 2010). Under these circumstances, the loan workout Wells Fargo offered Soriano was effectively rescinded. The court denies Wells Fargo summary judgment on the portion of Count V asserting a breach of contract in the form of the failure to return the initial payment.

Turning to the letter of June 18, 2010, the court notes that it contains the following promise: "If you make all the remaining required payments as outlined below resulting in full reinstatement, we will instruct our foreclosure counsel to dismiss foreclosure proceedings and report to credit bureaus accordingly." ECF No. 66-2. Viewing the evidence in the light most favorable to Soriano, this broad language creates at least a question of fact as to whether there was a contract between Wells Fargo Defendants and Soriano to modify both of Soriano's mortgages.

To the extent the letter of June 18, 2010, created an executory contract between Soriano and Wells Fargo Defendants, there is also a question of fact as to whether Wells Fargo Defendants breached the contract by foreclosing on Soriano's property before her fourth payment was even due. Soriano could

be said to have partially performed the contract but to have been wrongfully prevented by Wells Fargo Defendants from completing it.  As the purported nonbreaching party with respect to the letter agreement, she may at least arguably recover damages.  <u>See Amfac, Inc. v. Waikiki Beachcomber Inv. Co.</u>, 74 Haw. 85, 131, 839 P.2d 10, 34 (1992).

Wells Fargo Defendants question whether they could be deemed responsible for Soriano's failure to make the fourth payment.  The letter of June 18, 2010, said Wells Fargo Defendants would not foreclose if Soriano made all the required payments under the loan modification agreement.  While Wells Fargo Defendants argue that they were only agreeing not to foreclose on the First Mortgage, there is no dispute that Soriano made three of the four required payments under the loan modification plan.  Whether Wells Fargo Defendants frustrated Soriano's performance by foreclosing before the fourth payment was due is unclear.

With respect to the fourth payment, Soriano says that, over the telephone, she "did pay the $21,577.49 by giving Wells Fargo authorization to take that money from her account; and Wells Fargo gave her a confirmation number, 7081974837, to confirm that payment."  Soriano Decl. ¶ 45.  Wells Fargo

Defendants argue that they never received Soriano's payment and that this alleged phone call did not comport with the method for submitting payments set forth under the plan.  They note that there is no evidence that there were adequate funds in Soriano's account to cover the fourth payment.  On the present summary judgment motion, this court draws all reasonable inferences in the light most favorable to Soriano.  Soriano's sworn statement that she made the fourth payment as telephonically directed by Wells Fargo Defendants is sufficient to create a triable factual issue.  Most significantly, there is a question of fact as to whether the foreclosure that occurred on October 4, 2010, breached the loan modification plan articulated in the June 18, 2010 letter, which gave Soriano until October 17, 2010, to submit the fourth payment.  Summary judgment is precluded by these questions of fact.

### F.   Count VI: Promissory Estoppel.

Count VI alleges that Wells Fargo Defendants "have made numerous promises to Plaintiff, both oral and written, including, but not limited to, the promise that it would suspend foreclosure proceedings and not reinstitute such proceedings so long as Plaintiff did what Defendants requested with respect to payments and applications, and further that they would not re-institute

31

foreclosure proceedings without notice to Plaintiff."  Third Am. Compl. ¶ 120.  Wells Fargo argues that the portion of Soriano's allegations regarding the oral promises is barred by the Statute of Frauds and that the portion of Soriano's allegations regarding written promises fail as a matter of law.  Motion at 22-23.

The elements of a promissory estoppel claim under Hawaii law are: "(1) There must be a promise; (2) The promisor must, at the time he or she made the promise, foresee that the promisee would rely upon the promise (foreseeability); (3) The promisee does in fact rely upon the promisor's promise; and (4) Enforcement of the promise is necessary to avoid injustice." In re Herrick, 82 Haw. 329, 337-38, 922 P.2d 942, 950-1 (1996).

The court agrees with Wells Fargo that the portions of this claim based on oral statements are barred by the Statute of Frauds.  The court allows the portion of this claim based on written statements to proceed for the reasons discussed in Section IV.E.  The court notes again that the oral statements, even if not actionable on their own, may be admissible as evidence relating to any ambiguous written statements.

## V.        CONCLUSION.

For the foregoing reasons, the court grants Wells Fargo Defendants' motion for summary judgment on Count I and on the

portions of Count II relying on a new purported second mortgage or on alleged oral statements.  The court also grants summary judgment with respect to the portions of Counts III, IV, and VI based on oral statements.  The court denies summary judgment with respect to the portions of Counts II, III, IV, and VI not otherwise disposed of by the present order.  With respect to Count V, the court grants summary judgment to the extent Wells Fargo Defendants seek a ruling that the letter of March 9, 2010, was not an agreement to stop foreclosure proceedings.  In all other respects, the court denies summary judgment as to Count V. The court dismisses all claims against Defendant Wells Fargo Home Mortgage of Hawaii, LLC.

The parties are instructed to contact the Magistrate Judge to reschedule deadlines as necessary, including, if appropriate, the trial date.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, January 25, 2013.



                         /s/ Susan Oki Mollway
                        Susan Oki Mollway
                        Chief United States District Judge


Rosa E. Soriano v. Wells Fargo Bank, et al., 11-CV-0044 SOM-KSC, ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT